KAB

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

April Carrie Crick and Timothy Lee Crick,

                                Plaintiffs,

v.

City of Globe, et al.,

                                Defendants.

No. CV-21-00978-PHX-JAT (DMF)

**ORDER**

      Plaintiff April Carrie Crick and Timothy Lee Crick, who are represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 and Arizona state law.  (Doc. 1-3.)  Defendants move for summary judgment and Plaintiffs oppose the Motion.  (Docs. 67, 70.)

## I.   Background

      In their Complaint, Plaintiffs assert the following remaining[1] claims for relief:  (1) Count One—state law vicarious liability against the City of Globe; (2) Count Two—42 U.S.C. § 1983 claim for excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments against Defendants Hernandez, Hudson, and Walters; (3) Count Three—§ 1983 claim for retaliation for free speech in violation of the First Amendment against Defendants Hernandez, Hudson, and Walters; (4) Count Four—§ 1983 claim for wrongful

---

[1] Plaintiffs' state law claims against Defendants Walters, Hudson, and Hernandez were previously dismissed.  (Doc. 51.)

1   arrest in violation of the Fourth and Fourteenth Amendments against Defendants
2   Hernandez, Hudson, and Walters; (5) Count Five—§ 1983 claim for malicious prosecution
3   in violation of the Fourth and Fourteenth Amendments against Defendants Hernandez,
4   Hudson, and Walters; (6) Count Six—§ 1983 claim for violation of the right to familial
5   association under the First and Fourteenth Amendments against Defendants Hernandez,
6   Hudson, and Walters; and (7) Count Seven—§ 1983 municipal liability claim against the
7   City of Globe.  (Doc. 1-3 at 7–23.)  Plaintiffs sue for damages, lost wages, costs and
8   attorney's fees, and injunctive relief.  (*Id.* at 24–25.)

9       Defendants move for summary judgment on all of the remaining claims.

10  **II.**    **Legal Standards**

11      **A.**    **Summary Judgment**

12      A court must grant summary judgment "if the movant shows that there is no genuine
13  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
14  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The
15  movant bears the initial responsibility of presenting the basis for its motion and identifying
16  those portions of the record, together with affidavits, if any, that it believes demonstrate
17  the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

18      If the movant fails to carry its initial burden of production, the nonmovant need not
19  produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099,
20  1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts
21  to the nonmovant to demonstrate the existence of a factual dispute and that the fact in
22  contention is material, i.e., a fact that might affect the outcome of the suit under the
23  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable
24  jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.
25  242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th
26  Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its
27  favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,
28  it must "come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**B.     Qualified Immunity**

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis formerly required the court to make two distinct inquires, the "constitutional inquiry" and the "qualified immunity inquiry." *See Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "qualified immunity inquiry" asks if the right was clearly established at the relevant time. *Id.* at 201-02.

In *Pearson v. Callahan*, the Supreme Court held that the two-prong procedure established in *Saucier* is not an inflexible requirement; judges should be permitted to exercise their discretion in deciding which of the two prongs should be addressed first in light of the particular case. 555 U.S. 223, 242 (2009). That is, a court need not first determine if there was a constitutional violation before determining if a defendant is entitled to qualified immunity.

The qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The plaintiff has the burden to show that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero v. Kitsap Cnty.*,

931 F.2d 624, 627 (9th Cir. 1991).  For qualified immunity purposes, "the contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent."  *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted).  Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not "clearly established" or the officer could have reasonably believed that his particular conduct was lawful.  *Romero*, 931 F.2d at 627.

**III.   Facts**

On April 29, 2020, Plaintiff April Crick (hereinafter April) was spray painting on an exterior wall of her business, Crick's Gems and Minerals located at 549 West Ash Street in Globe, Arizona, with "anti-Globe Police Department political speech,"[2] for approximately two hours and observed several Globe Police vehicles drive by the property.  (Doc. 71 ¶¶ 1, 5; Doc. 68 ¶ 1.)  Defendants assert that at approximately 2:03 p.m., Globe Police Officer Roman Hernandez was driving by Crick's Gems and Minerals and observed various spray paintings on the side of the building, including "Bad Cop" with a circle and a line through it and a mural of George Floyd.  (Doc. 68 ¶¶ 1-2.)  Plaintiffs assert that there was no mural of George Floyd because George Floyd was not killed until May 25, 2020.  (Doc. 71 ¶ 5.)[3]  As he continued to drive past the business, Hernandez observed a female (April) on the north side of the building actively spray painting the north side exterior wall, and he turned around in order to approach her and investigate.  (Doc. 68 ¶ 3.)  Defendant Hernandez asserts that he was unaware of April's name or affiliation with the business when he saw her.  (Doc. 68 ¶ 33.)

Defendant Hernandez asserts that as he pulled in the north entrance/exit of the

---

[2] It appears Plaintiff was spray painting "Globe is Corrupt" and "Bad/Cop" with a circle around it.  (Doc. 72-3 at 1.)

[3] Defendants do not explain this discrepancy.

parking lot, he observed April walk at a fast pace[4] from the wall where she was spray painting to a black Nissan pickup truck parked with the driver's door within approximately three feet parallel to the building, and he immediately requested dispatch to send another unit. (Doc. 68 ¶¶ 4-5.)  Plaintiffs assert that when April saw Defendant Hernandez he asked her if she owned the building and she told him to get off her property, that the Globe Police Department was in trouble, and that she was reporting their conduct to the Attorney General.  (Doc. 71 ¶¶ 4, 14.)  Plaintiffs assert that Defendant repeated "Do you own the building?"  (*Id*. ¶ 4.)  Plaintiffs assert that April then folded her ladder, picked up her paint and walked to her Nissan pickup truck, which was parked 15 feet away, and put the ladder in the bed; April denies that her actions were hurried and asserts that Defendant Hernandez gave her no orders as she walked to her pickup.  (*Id*.)  April asserts that after she walked to her truck, Defendant Hernandez returned to his car and pulled his police car behind April's truck, preventing her from leaving.  (*Id*.)  April asserts that Hernandez then approached her truck and contacted Globe Police Department to run her license plate.  (*Id*.)

Defendant Hernandez asserts that April screamed various statements such as "Fuck Walters, he's in a heap of trouble, fuck all you motherfuckers" and "I'm fucking done, the attorney general will deal with you."  (Doc. 68 ¶ 6.)  Defendant Hernandez asserts that he advised April that he was unaware of the situation, but needed to know if she owned the building, and April replied by screaming "It doesn't fucking matter does it?" (Doc. 68 ¶ 7.) Defendant Hernandez asserts that April opened the driver's side door of the vehicle, threw the bucket in the vehicle, got into the driver's seat, closed the driver's side door behind her, and began to scream profusely again.  (*Id.* ¶ 8.)  Defendant Hernandez asserts that he approached the driver's side and opened the driver's side door and he was within arm's

---

[4] In their Statement of Facts, Defendants inconsistently claim that Plaintiff either walked at a face pace to her truck or ran toward her truck.  *Compare* Doc. 68 ¶ 4 ("he observed the female walk at a fast pace away from the wall where she was spray painting to a black Nissan pickup truck parked with the driver's door within approximately three feet parallel to the building" *with* Doc. 68 ¶ 8 ("the female then ran toward the truck, opened the driver door of the vehicle, threw the bucket in the vehicle . . . .").

reach of the building that was to his back as he held the driver's side door open.  (*Id.* ¶¶ 9-10.)  Defendant Hernandez asserts that he asked April to "stop," but she refused.  (*Id.* ¶ 11.)

Globe Police Officers Hudson and McCall arrived on the scene along with Arizona Department of Public Safety Trooper Darryl Deatherage.  (Doc. 68 ¶ 12.)  April asserts that Defendant Hernandez instructed Hudson to "block her in," and Hudson moved his vehicle to the passenger side of April's truck to block her in.  (Doc. 71 ¶ 4.)  April asserts that when Hernandez approached the truck, she tried to close the driver's side door, but Hernandez grabbed the door and struggled with April.  (*Id.*)  April asserts that she then shut her door and locked it while continuing to demand that that the officers get off her property.  (*Id.*)

Defendant Hernandez asserts that April started the truck and pressed the gas pedal and accelerated the truck forward attempting to flee the area while Hernandez stood between the driver's side door and the wall.  (Doc. 68 ¶ 13.)  Defendant Hernandez asserts that he feared for his safety believing he could be pinned to the wall behind him and he immediately let go of the door handle, moved away from the door, and retreated to the back left of the truck maintaining a view of April.  (*Id.* ¶¶ 14-15.)  Officers Hudson and McCall and DPS Trooper Deatherage assert that they observed April accelerate the truck forward believing she was attempting to flee and that her actions might seriously injure or kill Hernandez or members of the public if allowed to escape.  (*Id.* ¶ 16.)  April asserts that she could not have fled as there were poles and boulders blocking the truck's path.  (Doc. 71 ¶ 4.)  Defendants assert that April accelerated the truck forward 3-5 feet and then braked causing the door to shut, which she then locked.  (Doc. 68 ¶¶ 17-18.)

Officers Hernandez, Hudson, and McCall drew their weapons.  (Doc. 68 ¶ 19; Doc. 71 ¶ 4.)  Defendants assert that Hudson then moved his vehicle to block the driveway exit to April's right to prevent escape.  (Doc. 68 ¶ 22.)  Defendants assert that they ordered April to open her door and step out of the vehicle multiple times and to show her hands, but she refused.  (Doc. 68 ¶ 25.)  April asserts that she never moved her truck, but when Hudson pointed his gun at her head and gave an order to 'break her window," she started her engine, but then McCall told her "stop, don't" and April then turned her engine off.

(Doc. 71 ¶¶ 4, 31.)   April asserts that her hands were visible the entire time and only Defendant Hudson gave her "orders."  (*Id.* ¶ 27.)

Officer McCall recognized April from a previous call as April Crick.  (Doc. 68 ¶ 30; Doc. 71 ¶4.)  Hudson and Perez also knew April from previous interactions.  (Doc. 71 ¶ 32.)  Officer McCall walked around the back of the truck to approach April on the driver's side and then advised Defendant Hernandez of her identity. (Doc. 68 ¶ 30.)  Officer McCall stated she could possibly talk with April as McCall had a good rapport with April, and that April owned the Gem and Mineral store.  (Doc. 68 ¶¶ 31-32.)  Defendant Hernandez then made contact with Defendant Hudson to advise him of the reason he stopped to talk with April Crick.  (*Id.* ¶ 34.)  Defendant Hernandez observed Officer McCall attempt multiple times to talk with April and she finally agreed to turn her engine off, but continued to scream at Officer McCall.  (*Id.* ¶ 35.)

Defendant Hudson contacted Globe Police Commander Castaneda to advise him of the situation.  (*Id.* ¶ 36.)  After his discussion with the Commander, Defendant Hudson advised the Officers that Commander Castaneda ordered everyone to clear the scene and they all did so immediately.  (*Id.* ¶ 37.)  April was not arrested.  (*Id.* ¶ 38.)  The incident ended at 2:18 p.m. and thus spanned approximately 16 minutes. (Doc. 71 ¶ 22.)  After the Officers left, April called 9-1-1 and reported that Globe Police officers pointed guns at her head and then left.  (*Id.* ¶4.)  Officer Perez returned to obtain the license number of April's Nissan pickup, which showed it was owned by Plaintiff Tim Crick, and April told Perez to get off her property and stop harassing her.  (*Id.*)

Two days later on May 1, 2020, Defendant Hernandez was dispatched to Merle's Automotive located at 220 West Hackney Avenue in reference to criminal damage.  (Doc. 68-1 at 17 ¶ 36.)  When he arrived, he spoke to Cindy Nosie, an associate employed by Merle's Automotive, who stated she observed a green can of paint on the opposite side of the fence, located at Crick's Gem and Minerals.  (*Id.* ¶ 37.)  Cindy told Hernandez that Merle's Automotive recently purchased 2 new Chevrolet Colorados, which were parked on the west side of the Merle's Automotive parking lot, along the fence line that separates

the 2 businesses.  (*Id.*)  Cindy reported that the paint she observed was splattered on the 2 trucks' front ends.  (*Id.*)  Cindy stated that she contacted her manager, Henry, who advised her to file a police report.  (*Id.*)  Hernandez looked at the trucks and observed green paint splattered along the front passenger side fenders, front passenger side headlight, front passenger side bumper and along the hood of both vehicles, and observed green paint on the wall, in front of where the trucks were parked.  (*Id.* ¶ 38.)

Hernandez asserts that on May 1, 2020, he viewed a Facebook Post on April's Facebook page, which showed the paint can and other trash because April was not using trash cans at her business.  (*Id.* ¶ 39.)  In the post, April included a photo of the green paint splattered on the pavement and trash littering her parking lot.  (*Id.*)  The green paint was from a gallon of paint that had been thrown to the pavement, which splattered onto the wall and the victim's vehicles. (*Id.*)  Hernandez captured photographs of the damage, along with screen shots of April's Facebook post and put the images on a disk and secured them into evidence.  (*Id.* ¶ 40.)  Based on his knowledge of her involvement in painting her building with the same colored paint splattered on the vehicles at Merle's, and the Facebook post from April that depicted the cans of paint, along with paint splatter against the wall where the vehicles were parked, Hernandez forwarded a request for charging to the County Attorney's office for criminal damage.  (*Id.* ¶ 41.)  Once an estimated value to repair the damage was received, Hernandez attached a supplement along with a Gila County Attorney's Office longform for the County Attorney to determine whether criminal charges would be filed against April Crick based upon the Merle's Automotive complaint.  (*Id.* ¶ 42.)  April was tried and found not guilty on the criminal damage charge.  (Doc. 70 at 2.)

April asserts that prior to these incidents, she had several negative interactions with the Globe Police Department, including (1) in 2017, she assisted a victim to report sexual misconduct of an employee of the Globe Police Department and exposed other instances of sexual misconduct of Globe Police Department employees, including an incident where April was the victim of sexual misconduct; (2) after 2017, Globe police officers started pulling traffic offenders into April's business parking lot and refused to move the traffic

stops off of the parking lot despite the availability of other, larger parking areas nearby, and the stops doubled every year after she reported the misconduct in 2017, which culminated in 2-3 stops per day in her business's parking lot; and (3) April requested that Chief Walters stop the traffic stops in her parking lot, but when the stops did not end, she "sent multiple notices to the City of Globe and the Globe Police Department to stop the harassment and trespass." (Doc. 71 ¶ 37.)

## IV.    Discussion

### A.    Defendant Walters

Defendant Walters asserts that he is entitled to summary judgment because there is no evidence that he was personally involved in any of the incidents alleged in Plaintiffs' Complaint. In their Response to the Motion for Summary Judgment, Plaintiffs did not address this argument or otherwise make any arguments specific to Walters. There is no respondeat superior liability under § 1983, meaning a defendant's position as the supervisor of persons who allegedly violated a plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Here, it appears that Plaintiffs' allegations against Walters for excessive force in Count Two, wrongful arrest in Count Four, and malicious prosecution in Count Five are solely based on respondeat superior liability. Because there is no evidence that Defendant Walters is liable for any of those constitutional violations, summary judgment will be granted in favor of Defendant Walters as to Counts Two, Four, and Five. The Court will discuss the First Amendment retaliation claim asserted against Walters more fully below.

### B.    Fourth Amendment Wrongful Arrest (Count Four)

#### 1.    Arguments

Defendants assert that they are entitled to summary judgment as to Plaintiffs' wrongful arrest claim because April was not arrested for her conduct of April 29, 2020, and was not arrested in relation to the May 1, 2020 Merle's Automotive charges. With regard to the Merle's Automotive incident, Defendants assert that an independent

prosecutor, in his sole discretion, made the determination to charge and prosecute April relating to the May 1, 2020 Merle's complaint and a Constable served the Summons at the prosecutor's request.

Defendants assert that they are entitled to summary judgment on Plaintiffs' wrongful arrest claim because Officer Hernandez had reasonable suspicion to stop, detain, and interrogate April based upon his observations of April spray painting the building, and then attempting to flee from Officer Hernandez. Defendants further assert that when April accelerated her truck, the Officers had probable cause and justification to draw their weapons and probable cause to arrest her for Endangerment and Aggravated Assault on a Police Officer.

In Response, Plaintiffs assert that April did not commit a crime and no probable cause existed to suspect her of any illegal activity. In relation to the Merle's incident, Plaintiffs assert that Defendants wrongfully and illegally arrested April for criminal damage despite the lack of probable cause to do so.[5]

In Reply, Defendants assert that Officer Hernandez had reasonable articulable suspicion that criminal damage was being committed by April, Officer Hernandez did not know April and did not know who owned the gem store. Defendants assert that Officer Hernandez took reasonable steps to initiate the investigation and April responded by swearing and yelling at the officer, refused to truthfully answer whether she owned the building, and fled, and Officer Hernandez was justified in following April to her truck to continue investigating the suspected criminal damage and these actions did not violate April's constitutional rights.

### 2.    Legal Standard

To prevail on a Fourth Amendment false arrest claim, a plaintiff must show that there was no probable cause for the arrest. *See Cabrera v. City of Huntington Park*, 159

---

[5] Plaintiffs' arguments are riddled with legal conclusions without connection to the facts of this case or explanation as to how the facts meet the elements of the legal claims at issue. This has left the Court in the untenable position of determining the basis of Plaintiffs' claims.

F.3d 374, 380 (9th Cir. 1998) (citation omitted).  Probable cause exists when an officer has reasonably trustworthy information of facts and circumstances that are sufficient to justify the belief that an offense has been or is being committed.  *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (citing *Brinegar v. United States*, 338 U.S. 160, 175−76 (1949) (internal quotation marks omitted)).

"Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes."  *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008).  When determining whether probable cause exists, the Court looks to the totality of the circumstances known to the arresting officer at the time of the arrest.  *Id.* (internal quotation marks and citation omitted).  "In applying these standards, [the Court] must consider all the facts known to the officers and consider all the reasonable inferences that could be drawn by them before the arrest."  *United States v. Martin*, 509 F.2d 1211, 1213 (9th Cir. 1975).

### 3.    Analysis

Although not entirely clearly, it appears that Plaintiffs may be attempting to assert three separate false arrest claims.  The first appears to be Plaintiffs' contention that Defendant Hernandez had no basis to stop and question April based on her conduct of spray painting her building.  The second appears to be Plaintiffs' contention that the officers had no probable cause to arrest her when they pointed their guns at her.  The third appears to be the criminal damage charge filed against April relating to criminal damage at Merle's Automotive.  The Court will discuss each incident in turn.

### a.    Merle's Charge

With regard to criminal damages charge filed in connection with Merle's Automotive, Plaintiffs has made no substantive argument that April was "seized" within the meaning of the Fourth Amendment such that she could assert a Fourth Amendment false arrest claim relating to these charges.  *See Karam v. City of Burbank*, 352 F.3d 1188, 1193 (9th Cir. 2003) ("a Fourth Amendment seizure occurs when a person is held in

1  custody by arresting officers.")  Accordingly, summary judgment will be granted in favor

2  of Defendants to the extent Plaintiffs attempted to assert a false arrest claim based on the

3  criminal damage charge.

4                  **b.**    ***Terry* Stop**

5         As to Defendant Hernandez's initial decision to stop and question April when he

6  observed her spray painting the building, the Fourth Amendment permits police officers to

7  make brief, investigatory stops (*Terry* stops), even without probable cause for arrest, "if

8  the officer's action is supported by reasonable suspicion to believe that criminal activity

9  may be afoot." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (quoting

10  *United States v. Arvizu*, 534 U.S. 266 (2002)) (internal quotation marks omitted); *Terry v.

11  Ohio*, 392 U.S. 1 (1968).  Reasonable suspicion requires more than "inchoate and

12  unparticularized suspicion or [a] hunch"; the officer must have "some minimal level of

13  objective justification" for making the stop.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989)

14  (internal quotation marks and citations omitted).  This level of suspicion is "considerably

15  less than proof of wrongdoing by a preponderance of the evidence." *Id.*; *United States v.

16  Montoya de Hernandez*, 473 U.S. 531, 541 (1985) ("The 'reasonable suspicion' standard .

17  . . effects a needed balance between private and public interests when law enforcement

18  officials must make a limited intrusion on less than probable cause.")  As with probable

19  cause, reasonable suspicion is determined by reference to "the totality of the

20  circumstances." *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003).

21  Thus, "[a]ll relevant factors must be considered in the reasonable suspicion calculus—even

22  those factors that, in a different context, might be entirely innocuous." *Id.*

23         Defendant Hernandez asserts that he was investigating possible criminal damage in

24  violation of Arizona law.  Arizona Revised Statutes section 13-1602 provides:

25                **A.** A person commits criminal damage by:

26                1. Recklessly defacing or damaging property of another person.

27                2. Recklessly tampering with property of another person so as substantially to impair its function or value.

28                3. Recklessly damaging property of a utility.

4. Recklessly parking any vehicle in such a manner as to deprive livestock of access to the only reasonably available water.

5. Recklessly drawing or inscribing a message, slogan, sign or symbol that is made on any public or private building, structure or surface, except the ground, and that is made without permission of the owner.

6. Intentionally tampering with utility property.

Ariz. Rev. Stat. § 13-1602(A)(1-6). Here, it is undisputed that if April was not the owner of the building or did not have the owner's permission to spray paint, she would be liable for criminal damage. Rather than explaining to Hernandez that she was the owner of the building and confirming that contention with him, April screamed at Hernandez to get off "my" property. But Plaintiffs' action did nothing to dissipate the reasonable suspicion as anyone could yell at an officer to get off "my" property without actually being the owner of the property. Rather than simply showing she was the owner of the property, Plaintiff began yelling and attempting to leave the location. Accordingly, Defendant Hernandez had reasonable suspicion to investigate whether April owned the property when he observed her spray painting the property and then attempt to leave as soon as she saw him. Plaintiffs' contentions that Defendant Hernandez was subjectively motivated to investigate her conduct due to what she was writing is irrelevant to a false arrest claim.

Plaintiffs appear to assert that Defendant Hernandez should not have investigated April because Defendant Hernandez *knew* she owned the property. April does not assert that she had ever met Hernandez or that he had some other reason to know her on sight. Hernandez avers that he had never seen April before the subject incident and did not know her. April asserts that Hernandez must have known who she was based on her prior complaints about officers pulling cars over onto her property, but it is unclear how, even if Hernandez was aware of these complaints that he would know what April looked like. Plaintiffs also rely on Hernandez's testimony that he thought he saw a post on Facebook about a burglary that occurred at Plaintiffs' business. Plaintiffs both deny that any such post ever existed, and assert that this testimony means that Hernandez must have been on April's Facebook page and that he must have seen a photo of her on her Facebook page

prior to the spray painting incident.  This reasoning is illogical and unsupported by any evidence.  Plaintiffs' contentions that Defendant Hernandez would have known her on sight are speculative and conclusory and insufficient to create a genuine issue of material fact.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").  Accordingly, to the extent Plaintiffs' Fourth Amendment false arrest claim is based on the *Terry* stop, summary judgment will be granted in favor of Defendants.

### c.    Gunpoint

Summary judgment must be denied to Defendant Hernandez and Hudson as to Plaintiffs' final Fourth Amendment claim that Defendants arrested her when they pointed their guns at her without probable cause.  There is a disputed issue of material fact as to whether April accelerated her car, causing possible danger to Defendant Hernandez.  Defendants appear to assert that because every officer at the scene claims that April did accelerate, the Court may disregard April's testimony that she did not accelerate.  The Court may not, however, resolve credibility disputes at the summary judgment stage, and the Court must draw all inferences in Plaintiffs' favor.  Construing the facts in Plaintiffs' favor, Defendants pointed their guns at April because she was suspected of misdemeanor criminal damage and had locked herself in her car.  A reasonable jury could determine that holding Plaintiff at gunpoint was a seizure within the meaning of the Fourth Amendment and that such seizure was unreasonable under the circumstances.  *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1015 (9th Cir. 2002) ("In cases involving investigatory or *Terry* stops, we have consistently applied the principle that drawing weapons and using handcuffs or other restraints is unreasonable in many situations.").

Defendants assert that they are entitled to qualified immunity as to this portion of Plaintiffs' false arrest claim because April ran to her vehicle, failed to follow commands to stop and show her hands, and when Officer Hernandez opened the driver's side door, she accelerated the vehicle forward pulling away from Hernandez to escape, which imminently

endangered Officer Hernandez and the public.  Defendants' assertions that they are entitled to qualified immunity are premised on their version of facts and therefore qualified immunity is not appropriate.  *See, e.g., Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("[w]here the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate").

For the foregoing reasons, summary judgment is denied as to Plaintiffs' Fourth Amendment false arrest claim asserted against Defendant Hernandez and Hudson to the extent it is premised on the officers' pointing their guns at April.

### C.    Fourth Amendment Malicious Prosecution (Count Five)

Defendants assert that they are entitled to summary judgment as to Plaintiffs' malicious prosecution claim because the causal chain was broken when the prosecutor exercised his independent judgment to charge April with a crime relating to the criminal damage at Merle's Automotive.

In Response, Plaintiffs do not address Defendants' arguments, but argue that "Defendants Agents [sic] violated April Crick's Fourth and Fourteenth Amendment rights to be free from malicious prosecution when they instituted charges and proceedings against April Crick for criminal damage, which resulted in April Crick's unlawful prosecution when they had no evidence that plaintiff committed the crime."  (Doc. 70 at 11.)

In Reply, Defendants assert that Plaintiffs fail to establish facts that any City of Globe Defendant acted to deprive April of her rights under the Fourth or Fourteenth Amendments regarding the sole discretion to charge and prosecute by an independent County Attorney.

In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right."  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citations omitted).  "Malicious prosecution actions are not limited to suits against

1   prosecutors but may be brought, as here, against other persons who have wrongfully caused

2   the charges to be filed." *Id.* at 1066-67 (citation omitted).

3        However, "[w]itnesses, including police officers, are absolutely immune from

4   liability for testimony at trial, and before a grand jury." *Lisker v. City of Los Angeles*, 780

5   F.3d 1237, 1241–42 (9th Cir. 2015) (citations omitted).  "Absolute witness immunity also

6   extends to preparatory activities 'inextricably tied' to testimony, such as conspiracies to

7   testify falsely." *Id.* (citations omitted).  "Were it otherwise, a criminal defendant turned

8   civil plaintiff could simply reframe a claim to attack the preparation instead of the

9   absolutely immune actions themselves." *Id.* (citation omitted).  Therefore, to show that

10  Defendants are not entitled to absolute immunity, Plaintiffs must provide evidence that

11  Defendants engaged in "'non-testimonial' acts, such as 'tampering with documentary or

12  physical evidence or preventing witnesses from coming forward'" that led to April's

13  prosecution.  *Id.* (citation omitted).

14        As an initial matter, there is no evidence that Defendant Hudson was involved in the

15  investigation that led to the prosecutor filing a criminal charge against April.  Accordingly,

16  summary judgment will be granted in favor of Defendant Hudson as to Plaintiffs' malicious

17  prosecution claim.

18        Moreover, the basis of Plaintiffs' malicious prosecution claim against Hernandez is

19  entirely unclear.  Plaintiffs assert that April was charged with criminal damage based on

20  Hernandez's reports regarding what employees of Merle's Automotive told him and based

21  on his own investigation, which included observing the area and trucks himself and a

22  Facebook post that April made.  Plaintiffs do not explain how the facts support that

23  Hernandez maliciously prosecuted April.  Plaintiffs appear to rely on the acquittal itself to

24  support a claim of malicious prosecution, but an acquittal by itself cannot sustain a claim

25  of malicious prosecution.  Because there is no evidence that Defendant Hernandez

26  maliciously prosecuted April, summary judgment will be granted in favor of Defendant

27  Hernandez as to the malicious prosecution claim, and that claim will be dismissed.

28  . . . .

### D.     Fourth Amendment Excessive Force (Count Two)

Defendants assert that they are entitled to summary judgment on Plaintiffs' excessive force claim because April's "vehicle crimes were violent and rendered her a threat as she was actively attempting to flee the property," and therefore the force used by Officers Hernandez and Hudson was reasonable.  (Doc. 67 at 15.)  Defendants assert that there was no time for the Officers to deliberate or seek other options in light of April's sudden, dangerous choice to accelerate her vehicle while Officer Hernandez was holding onto her door.

In Response, Plaintiffs assert that pulling guns and pointing the guns at April's head when she had done nothing to give the officers probable cause to believe that she had committed a crime or presented a danger to the officer constituted excessive force.

In Reply, Defendants assert that April engaged in unprovoked flight from Officer Hernandez, hurried to her truck, started the engine, refused his requests to "stop," and when Officer Hernandez opened her driver side door, April accelerated the truck forward placing Officer Hernandez and others in reasonable fear for his safety and welfare.

If the alleged use of excessive force was applied during the plaintiff's arrest, the Fourth Amendment objective-reasonableness standard applies.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  Under this standard, a court considers certain objective factors and does not consider the defendant officer's intent or motivation.  *See id.* at 397, 399 ("subjective concepts like 'malice' and 'sadism' have no proper place in [this] inquiry").

Under the Fourth Amendment standard, the reasonableness of the use of force "must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  When determining whether the totality of the circumstances justifies the degree of force, the court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts

1    and circumstances confronting them, without regard to their underlying intent or
2    motivation." *Id.* at 397 (citations omitted).

3         Here, Defendants' arguments are based on their version of events, which the Court
4    cannot properly credit on a Motion for Summary Judgment.   Construing the facts in
5    Plaintiffs' favor, April was suspected of misdemeanor property damage, locked herself in
6    her car while verbally challenging the officers, and had her hands visible at all times, and
7    did not pose a threat to the officers.  Accordingly, there are disputed issues of material fact
8    precluding summary judgment on the excessive force claim.[6]  *See, e.g.*, *Robinson v. Solano*
9    *Cnty.*, 278 F.3d 1007, 1014-15 (9th Cir.2002) (en banc) (holding that officers' use of a
10   drawn gun at close range when they pointed the gun at the head of an unarmed
11   misdemeanor suspect is a constitutional violation).   Defendants also assert that they are
12   entitled to summary judgment as to the excessive force claim, but again argue qualified
13   immunity based on their version of the facts.   Accordingly, a qualified immunity
14   determination is premature.  For the foregoing reasons, summary judgment is denied as to
15   Plaintiffs' Fourth Amendment excessive force claim against Defendants Hernandez and
16   Hudson.

17                    **E.    First Amendment Retaliation (Count Three)**

18        Defendants assert that they are entitled to summary judgment on Plaintiffs' First
19   Amendment retaliation claims because the initial field investigation of April was proper,
20   Officer Hernandez was justified in his concerns that April was causing criminal damage,
21   his concern was supported by her conduct of walking away from him, and the Officers'
22   subsequent actions had nothing to do with April spray painting a building and were solely
23   in response to April's actions, and not in response to her exercising her right to free speech.

---

24        [6] Defendants appear to acknowledge that there are disputed issues of material fact
25   precluding summary judgment.  *See* Doc: 67 at 19-20 ("***A reasonable jury*** could find that
     April Crick's dangerous conduct in accelerating her vehicle could have seriously injured
26   or killed Officer Hernandez. Her dangerous conduct was the sole reason the Officers drew
27   their weapons in that singular, chaotic, and rapidly evolving event that required split-
     second decisions to be made by Officers Hernandez and Hudson.") (emphasis added).
28

Defendants assert that there is no evidence in the record that the Officers had any retaliatory motive or that there was any causal link between drawing their weapons when physically threatened by April in her vehicle and April's prior act of spray painting a building.

In Response, Plaintiffs assert that when April asked Officer Hernandez his basis for entering her property and stated that she had done nothing wrong, she was exercising her constitutionally protected rights and such speech did not warrant a search of her property or unlawful police conduct.  Plaintiffs further assert that April "had trespassed all Globe Police from her property and had Globe Police no trespassing signs all over her property," and "notice was sent to the City of Globe and the Globe Police Department and "Chief Welker [sic]."  (Doc. 70 at 8.)  Plaintiffs assert that April's exercise of her constitutional rights was a significant moving factor to the excessive force employed by Defendants because in response to April's lawful speech, including demanding that Hernandez and Hudson get off her property and stating that she had done nothing wrong, the officers retaliated and used excessive and unlawful force against her.

Plaintiffs further assert that Hernandez and Hudson "had retaliatory animus toward April Crick's lawful speech, and [therefore] urged prosecution of April Crick for multiple charges of criminal damage despite the absence of probable cause."  (Doc. 70 at 8-9.)  Plaintiffs assert that Hernandez and Hudson engaged in "retaliatory conduct in attacking, assaulting, and torturing a person, who simply asked for the Police to remove themselves from her property, making a political statement about the Globe Police Department and stating that he/she had done nothing wrong, [sic] would chill any reasonable person of ordinary firmness in their exercise of their First Amendment rights." (*Id.* at 9.)

In Reply, Defendants assert that because there was a lawful basis for the officers' actions, Plaintiff's First Amendment retaliation claim fails as a matter of law.

Generally, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.  *Nieves v. Bartlett*, __ U.S. __, 139 S. Ct. 1715, 1722 (2019).  To recover under § 1983 for such retaliation, a plaintiff must prove: (1) she engaged in constitutionally protected activity; (2) as a result,

she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (citations omitted).  Additionally, with a limited exception,[7] a plaintiff must plead the absence of probable cause to support a claim for retaliatory arrest.  *Nieves*, 139 S.Ct. at 1727.

As noted above, the basis of Plaintiffs' claims is not entirely clear.  Plaintiffs appear to assert four bases for their First Amendment retaliation claims: (1) that Globe police officers supervised by Defendant Walters retaliated against April for past complaints against the police department regarding sexual assault by pulling traffic violators over in her business's parking lot; (2) that Defendant Hernandez investigated her spray painting because of her past actions and/or because she was spray painting anti-police sentiments on her business; (3) that Defendants Hernandez and Hudson pulled their guns on April because she was spray painting anti-police sentiments on her building and/or because she told them to get off her property; and (4) that Defendant Hernandez retaliated against her by filing the criminal damage charge initiated by the complaint from the employee at Merle's automotive.

### a.    *Terry* Stop and Merle's Charges

As discussed above, Hernandez had reasonable suspicion to conduct a *Terry* stop and Plaintiffs' First Amendment retaliation claim based on the *Terry* stop therefore fails.  Likewise, as discussed above, there is no evidence that probable cause was lacking for the charges relating to the criminal damage at Merle's automotive, and Plaintiffs' First Amendment retaliation claim based on the criminal damage charge therefore fails.

---

[7] An exception exists "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.  In such cases, an unyielding requirement to show the absence of probable cause could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Nieves*, 139 S. Ct. at 1727 (citation omitted).

1

**b.**     **Traffic Stops**

2        With regard to the alleged retaliatory activity of unidentified Globe police officers

3    pulling over traffic violators in Plaintiffs' business parking lot, Defendants assert that

4    Plaintiffs' business parking lot is located on a portion of West Ash Street that is also a

5    portion of U.S. Route 60, an extremely busy highway, which is patrolled by Globe police,

6    county sheriff deputies, and state highway patrol officers, and April herself acknowledged

7    that local police cannot necessarily control where civilian motorists will ultimately pull

8    over and stop during a traffic stop.

9        Defendants assert that no Defendant engaged in any conspiracy to have passing

10    motorists pull over into Plaintiffs' parking lot and the burdens and advantages of owning

11    commercial property along a federal highway are not attributable to Defendants.

12    Defendants assert that Plaintiffs' allegations to the contrary are hard to follow.

13        Indeed, Plaintiffs have not pointed to any evidence establishing that any Defendant

14    or non-Defendant Globe police officer either controlled where a motorist would pull over

15    when a traffic stop was initiated or that such traffic stops were initiated to retaliate against

16    April for past speech.  Plaintiffs cite to evidence in the form of Declarations that witnesses

17    saw traffic stops in Plaintiffs' business parking lot, and Plaintiffs argue that there were

18    other, bigger parking lots nearby that would have been better places for unidentified

19    officers to pull over motorists, but Plaintiffs' evidence simply does not support the

20    elements of a First Amendment retaliation claim.

21        Plaintiffs assert that Defendant Walters was aware that April did not want motorists

22    pulled over in her business parking lot, but again, Plaintiffs produce no evidence that any

23    Globe police officer exercised control over where a motorist would pull over when a traffic

24    stop was initiated.  Accordingly, Defendants are entitled to summary judgment as to

25    Plaintiffs' First Amendment retaliation claim based on the theory that motorists were

26    pulled over in her business parking lot in retaliation for April's past complaints against

27    individual Globe police officers.

28    . . . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.      **Gunpoint**

With regard to Plaintiffs' final theory of First Amendment retaliation, that Defendants Hernandez and Hudson pointed their guns at her to retaliate against her for her anti-police spray painting, there is a disputed issue of material fact as to why Defendants pointed their guns at April.  Accordingly, summary judgment will be denied as to this portion of Plaintiffs' First Amendment retaliation claim asserted against Defendants Hernandez and Hudson.

Defendants made no clearly established argument with regard to the First Amendment retaliation claim, and relied only on their version of facts in moving for qualified immunity throughout their motion.  Under Plaintiffs' version of events, as noted above, there is a disputed issue of material fact as to whether Plaintiff was arrested when the officers pointed their guns at her and there is a disputed issue of material fact as to the reason Defendants pulled their guns on her and whether there was probable cause for an arrest.  It is clearly established that an arrest cannot be made in retaliation for the exercise of First Amendment rights.  *See, e.g.*, *Nieves*, 139 S. Ct. at 1722.  It is likewise clearly established that the officers could not pull their guns on Plaintiff simply for engaging in protected speech.  *See United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) (The "First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.") (quoting *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461–62 (1987)).  Accordingly, even if Defendants moved for qualified immunity on the First Amendment retaliation claim, summary judgment could not be granted on this record.  *See Wilkins*, 350 F.3d at 956.

F.      ***Monell* (Count Seven)**

Defendants assert that they are entitled to summary judgment on Plaintiffs' *Monell* claim because there is no evidence that suggests that the City of Globe or Chief Walters failed to train or supervise Officers Hernandez or Hudson.  Defendants assert that there is nothing in the record that specifically alleges or proves that Chief Walters had any role in

1    causing, participating in, or ratifying any alleged constitutional violations.  Defendants

2    further assert that Plaintiffs have not identified any specific policy or unlawful custom

3    which violated their alleged Constitutional rights.

4           In Response, Plaintiffs argue that "Defendant Globe's officers, including Defendant

5    Agents, were acting under the direction and control of the City of Globe, which acted by

6    and through its agents and employees who were responsible for making the policies of the

7    Globe Police Department, its officers, and operations."  (Doc. 70 at 14.)  Plaintiffs assert

8    that April "complained to the City of Globe and State Departments of harassment and

9    misconduct by the Globe Police Department, and she was deprived of her constitutional

10    rights by Defendant Globe and its employees, including Defendants['] Agents, who [were]

11    acting under color of law at all times relevant herein."  (*Id.*)  Plaintiffs further assert that

12    "under a ratification theory, Defendant Globe delegated authority to Defendants['] Agents

13    to engage in unlawful arrests and the use of illegal and excessive force, and Defendant

14    Globe's final policymakers' endorsement of the decisions and actions of Defendants[']

15    Agents to engage in unlawful arrests and the use of excessive force confirms clear that the

16    policy was in effect at the time of the incident and was the moving force for Defendants'

17    unconstitutional acts."  (*Id.*)  To support these arguments, Plaintiffs cite to exhibits relating

18    to April's complaints about officers pulling motorists into her parking lot.  Plaintiffs also

19    cite to their expert's report, which asserts that there were better practices that Globe police

20    officers could have used in their dealings with April.  Plaintiffs' expert also opines that

21    there was "an implied targeted investigative focus" on April by officers within the Globe

22    Police Department.  (Doc. 72-19 at 2.)

23           In Reply, Defendants assert that there is nothing in the record to support any claim

24    that the City of Globe maintained a specific policy or custom that resulted in a violation of

25    Plaintiffs' federal constitutional or other rights and no evidence of any such pattern or

26    practice, and Plaintiffs have not identified any such specific policy or unlawful custom

27    which violated their Constitutional rights.

28           To support a claim based on a policy, practice, or custom of Defendant City of

Globe, Plaintiffs must produce evidence showing (1) that her constitutional rights were violated by an employee or employees of the Defendant; (2) that the Defendant has customs or policies that amount to deliberate indifference; and (3) that the policies or customs were the moving force behind the violation of Plaintiffs' constitutional rights in the sense that the Defendant could have prevented the violation with an appropriate policy. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002). "Policies of omission regarding the supervision of employees . . . can be policies or customs that create . . . liability . . . , but only if the omission reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation." *Id.* at 1194 (quotations omitted).

A "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To support a *Monell* claim for failure to train under § 1983, a plaintiff must allege facts demonstrating that the local government's failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Deliberate indifference may be shown if there are facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (citing *Canton*, 489 U.S. at 390). While "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," *Connick*, 563 U.S. at 62, a plaintiff may still prove a failure-to-train claim without showing a pattern of constitutional violations where a violation "may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006) (internal citation omitted). In such instances, "failing to train could be so patently obvious

that [an entity] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 F.3d at 64.  A plaintiff may prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded.  *See Gillette v. Elmore*, 979 F.2d 1342, 1348 (9th Cir. 1992); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).

Plaintiffs' arguments are threadbare recitals of the elements of a *Monell* claim with no connection to the facts of this case.  Reviewing the exhibits Plaintiffs cite, it appears that Plaintiffs' *Monell* claim is based on the history of traffic stops in Plaintiffs' parking lot, but, as discussed above, there is no evidence in this Record that those traffic stops resulted in a violation of Plaintiffs' constitutional rights.  Moreover, the Court cannot rely on Plaintiffs' expert opinion that there was "an implied targeted investigative focus" on April by officers within the Globe Police Department without evidence supporting such an assertion.  Accordingly, summary judgment will be granted in favor of Defendants as to Plaintiffs' *Monell* claim.

### G.     State Law Vicarious Liability (Count One)

Defendant Globe asserts that it is entitled to summary judgment on Plaintiff's vicarious liability claims because Plaintiff cannot succeed on any negligence claims against the officers and there is no evidence that Globe engaged in any negligent conduct toward Plaintiff.

In their Complaint, the basis of Plaintiff's "negligence and other liability claims" in Count One is variously listed as harassment, retaliation, stalking, assault and battery, intentional infliction of emotional distress, "repeated trespass," and other "civil rights violations."

In their Response to the Motion for Summary Judgment, Plaintiffs assert "The City Of Globe and Globe Police Departments by and through their agents/officers, servants and/or employees intentionally committed harassment, by retaliation and pulling in traffic stops up to 2 to 3 a day into her tiny parking lot because she was a whistle blower and engaging in free speech.  Defendants acted in violation of her civil rights, assault [sic] her

1    and created intentional infliction of severe emotional distress and were in other ways

2    negligent, wanton, reckless and careless."  (Doc. 70 at 2.)  Plaintiffs further assert that

3    "[t]he Globe Police Department, City Of Globe, its agents, servants, representatives and/or

4    employees were negligent in hiring, training, educating, [sic] their agents to [sic]

5    interaction with April Crick and her post traumatic stress syndrome. See Exhibits 11, 13

6    and 16 in hiring personnel with excessive force findings before their employment with

7    Defendant City of Globe.[8]  See PSOF paragraph 26-27, 32 and 38."  (*Id.* at 3.)

8         Plaintiffs do not explain April's claims or connect the facts of this case to her claims

9    in these arguments, but rather cite to various Exhibits, including Exhibits 7, 11, 13, 15, 26,

10   4, 9, 30-32, 39, 51-53, PSOF 5, 25-26, 29, with the apparent expectation that the Court will

11   review all of these Exhibits and make Plaintiffs' arguments for them.   This is

12   impermissible.  *See* Fed Rule Civ. P. 56(c); LRCiv 56.1(a); *Orr v. Bank of America*, 285

13   F.3d 764, 775 (9th Cir. 2002) (internal quotation omitted) ("Judges need not paw over the

14   files without assistance from the parties."); *Indep. Towers of Wash. v. Washington*, 350

15   F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in

16   briefs.") (citation omitted).

17        As discussed above, there is no evidence in this Record supporting Plaintiffs'

18   contention that unidentified Globe police officers were engaged in a campaign of

19   harassment, stalking, repeated trespass, or retaliation when motorists pulled into Plaintiffs'

20   parking lot during traffic stops.  Plaintiffs have produced no evidence that Defendant Globe

21   or its officers had control over these motorists' actions or deliberately took other action

22   that resulted in these stops on Plaintiffs' business property.  Accordingly, to the extent

23   Plaintiffs' state law claims are based on these actions, Defendants are entitled to summary

24   _____

25        [8] The Court could locate nothing within Exhibits 11 and 13, Plaintiffs' expert's
26   reports, that demonstrated that Globe hired "personnel with excessive force findings before
     their employment with Defendant City of Globe" and could not locate an "Exhibit 16."
27   Regardless, Plaintiffs were required to assert the facts that supported their arguments in
     their Motion and not require the Court to locate and determine what evidence is supportive
28   of Plaintiffs' arguments for them.

1   judgment.

2          With regard to Plaintiffs' possible state law claim of assault based on the officers

3   pointing their guns at April, Defendant Globe asserts that it cannot be liable under a tort

4   theory of negligence for its employees' intentional conduct under *Ryan v. Napier*, 425 P.3d

5   230 (Ariz. 2018).  In Response, Plaintiff did not address this argument, and has therefore

6   failed to demonstrate how Defendant Globe can be liable for its employees' negligence in

7   the alleged use of force on Plaintiff.   *See Ryan*, 425 P.3d at 236 ("negligent use of

8   intentionally inflicted force" is not a cognizable claim, and that negligence liability cannot

9   result from a law enforcement officer's "'evaluation' of whether to intentionally use force

10  against another person.").  Accordingly, summary judgment will be granted in favor of

11  Defendant Globe to the extent Plaintiff asserted state law negligence claims based on

12  assault.

13         Defendants assert that they are entitled to summary judgment as to Plaintiffs' claim

14  for intentional infliction of emotional distress because Plaintiffs failed to "disclose facts or

15  expert opinion to support their conclusory allegations, including, without limitation, that

16  traffic violators who were lawfully pulled over in front of or on Plaintiffs' property rose to

17  the level of 'extreme and outrageous' conduct."  (Doc. 67 at 27-28.)

18         Plaintiffs' response is that "Defendants acted in violation of her civil rights, assault

19  [sic] her and created intentional infliction of severe emotional distress and were in other

20  ways negligent, wanton, reckless and careless."  (Doc. 70 at 2.)  Plaintiffs do not otherwise

21  connect the facts of this case to how April was subjected to intentional infliction of

22  emotional distress.

23         The tort of intentional infliction of emotional distress requires proof of three

24  elements: (1) the conduct must be "extreme and outrageous"; (2) the defendant must intend

25  to cause emotional distress or recklessly disregard that such distress will, with a near

26  certainty, occur from his conduct; and (3) severe emotional distress must occur as a result

27  of the defendant's conduct.  *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (2005) (citing

28  *Ford v. Revlon*, 734 P.2d 580, 585 (1987)).

Arizona follows the standard for liability set out in Restatement of Torts (Second) § 46. *Ford*, 734 P.2d at 585. A comment to § 46 states that:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Thus, to satisfy the "extreme and outrageous" element, a defendant's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995). Whether a defendant's acts are sufficiently extreme or outrageous is determined by the court. *Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1012 (D. Ariz. 2013) (citing *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152, 155 (1978)).

Here, a reasonable jury could determine that if Defendants Hernandez and Hudson pointed their guns at April solely in retaliation for her protected speech, the first two elements of a claim of intentional infliction of emotional distress are met. Defendants assert that Plaintiffs cannot prove the third element because she did not disclose an expert to rebut Defendants' expert's opinions that April does not have post-traumatic stress disorder. Even assuming that it is unrebutted that April does not have post traumatic stress disorder, Defendants have not shown that there is no other evidence in the record, including April's testimony and medical records demonstrating severe emotional distress as a result of Defendants Hernandez and Hudson pointing their guns at her. Accordingly, to the extent Plaintiffs' claim for intentional infliction of emotional distress is based on Defendants

1   Hudson and Hernandez pointing their guns at April in retaliation for her protected speech,
2   the Motion for Summary Judgment will be denied, but is granted as to any other asserted
3   theory for an intentional infliction of emotional distress claim.

4        For the foregoing reasons, Defendants' Motion for Summary Judgment is denied as
5   to Plaintiffs' state law vicarious liability claim for intentional infliction of emotional
6   distress asserted against the City of Globe to the extent those claims are premised on
7   Defendants Hernandez and Hudson pointing their guns at April.  The Motion is granted as
8   to the state law claims in all other respects.

9       **H.**    **Right to Familial Association (Count Six)**

10        Defendants assert they are entitled to summary judgment as to Plaintiffs' assertion
11   that they have been deprived of a familial relationship in violation of their Fourteenth
12   Amendment rights because where the officers did not have time to deliberate, a use of force
13   shocks the conscience only if the officers had a "purpose to harm" for reasons unrelated to
14   legitimate law enforcement objectives.

15        "The substantive due process right to family or to familial association is well
16   established," and the state's interference with this liberty interest without due process of
17   law is remediable under § 1983.  *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th
18   Cir. 2011) (citation omitted).  "To amount to a violation of substantive due process,
19   however, the harmful conduct must shock [ ] the conscience' or 'offend the community's
20   sense of fair play and decency.'"  *Rochin v. California,* 342 U.S. 165, 172–73 (1952).  The
21   "shocks-the-conscience" standard is, depending on the circumstances, met either by
22   showing that a defendant (1) acted with "deliberate indifference" or (2) with a "purpose to
23   harm*"* for reasons unrelated to legitimate law enforcement objectives.  *Porter v. Osborn*,
24   546 F.3d 1132, 1137 (9th Cir. 2008) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833,
25   846 (1998)).  Under the first situation, if a defendant is in a position "[w]here actual
26   deliberation is practical," then his deliberate indifference to the harm he caused may be
27   sufficient to "shock the conscience."  *Gantt v. City of Los Angeles*, 717 F.3d 702, 707-08
28   (9th Cir. 2013) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).  "On the

other hand, when an officer makes a snap judgment because of an escalating situation," then the courts apply the "purpose-to-harm" standard.  *Id.* (quoting *Wilkinson*, 610 F.3d at 554).

Under Supreme Court precedent, conduct that "shocks the conscience" includes conduct that violates the "decencies of civilized conduct," that is "brutal" or "offensive" or "arbitrary."  *Cnty. of Sacramento*, 523 U.S. at 846-47 (citations omitted).  Negligence, however, "is categorically beneath the threshold of constitutional due process."  *Id.* at 849.  Whether conduct such as recklessness or gross negligence shocks the conscience "is a matter for closer calls."  *Id.* at 849 (noting that rules of due process are not "subject to mechanical application" and depend on the particular facts in a case).

Here, Defendants' argument is premised on their version of facts, but there is a disputed issue of material fact as to whether the officers' pointed their guns at April in retaliation for her protected speech, which precludes summary judgment on Plaintiffs' familial association claim.  To the extent Plaintiffs' familial association claim is premised on any other conduct, summary judgment is granted in favor of Defendants for the reasons discussed herein.

## I.    Damages

Defendants assert that Plaintiffs have not disclosed any compensatory damages and request summary judgment as to any claims premised on Plaintiffs sustaining damages, but even assuming for purposes of this Order that Plaintiff cannot demonstrate compensatory damages, Defendants do not address whether Plaintiff would be entitled to nominal and/or punitive damages.  Accordingly, Defendants' request to dismiss any claim for damages or to dismiss any claims premised on damages will be denied.

## V.    Conclusion

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 67).

(2)     Defendants' Motion for Summary Judgment (Doc. 67) is **granted in part and denied in part** as follows:

(a)     The Motion is **denied** as to (1) Plaintiffs' Fourth Amendment false arrest claim asserted against Defendant Hernandez and Hudson in Count Four to the extent it is premised on the officers' pointing their guns at April; (2) Plaintiffs' Fourth Amendment excessive force claim against Defendants Hernandez and Hudson in Count Two; (3) Plaintiffs' First Amendment retaliation claim asserted against Defendants Hernandez and Hudson in Count Three based on the allegation that Defendants Hernandez and Hudson pointed their guns at April to retaliate against her for her anti-police spray painting; (4) Plaintiffs' state law vicarious liability claim for intentional infliction of emotional distress asserted against the City of Globe to the extent that claim is premised on Defendants Hernandez and Hudson pointing their guns at April; and (5) Plaintiffs' Fourteenth Amendment Familial Association claim against Defendants Hernandez and Hudson in Count Six, and these are the sole remaining claims in this action.

(b)     The Motion is **denied** as to Defendants' request for summary judgment as to damages.

(c)     The Motion is otherwise **granted**.

(d)     Defendant Walters and Counts Five and Seven are **dismissed from this action with prejudice**.

(3)     This action is referred to Magistrate Judge John Z. Boyle to conduct a settlement conference.  The Parties must jointly call Magistrate Judge Boyle's chambers at (602) 322-7670 within 14 days to schedule a date for the settlement conference.

Dated this 22nd day of September, 2023.

James A. Teilborg
Senior United States District Judge